LETICIA JOY ARCINIEGA
larcinie@verizon.net
890 Verona Ave
San Jacinto, CA 92583
Telephone: 951-654-1095
Facsimile: 951-654-8476

IN PRO PER

FILED

FEB 2 4 2015

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION

| | |
|---|---|
| In re | Case No. 6:11-bk-15412-SY |
| LETICIA JOY ARCINIEGA, | Adv. No. 6:11-ap-01735-SY |
| Debtor. | Before the Honorable Scott H. Yun<br>Chapter 7 |
| JAMES CLARK,<br><br>Plaintiff,<br><br>v.<br><br>LETICIA JOY ARCINIEGA,<br><br>Defendant. | DEFENDANT LETICIA ARCINIEGA'S<br>COMPENDIUM OF TRIAL EXHIBITS<br><br>TRIAL<br>Date:  March 17, 2015<br>Time:  9:30 a.m.<br>Ctrm:  304 |

TO THE HONORABLE SCOTT H. YUN, UNITED STATES BANKRUPTCY COURT JUDGE,

THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

Defendant Leticia Arciniega respectfully submits the following Trial Exhibits:

Compendium of Exhibits

a.  Direct Testimony Trial Declaration of Plaintiff James A. Clark

b.  2000 Divorce Decree

c.  Greater Atlantic Deed of Trust, 2/27/2003

d.  Aegis Wholesale Corporation Deed of Trust, 4/13/2004

e.  Arrowhead property tax history; reflecting homeowner's exemptions due to Mr. Clark's

residence

1

f.   Verona Property Details reflecting my sole ownership

g.   2009 Settlement Agreement in its entirety.

h.   Plaintiff's Initial Disclosures Pursuant to Rule 7026 of the Federal Rules of Bankruptcy
     Procedure dated September 2, 2011, which contains:   Deposition of : Leticia Arciniega, Monday
     January 28, 2008.

DATED:  FEBRUARY 21, 20153          LETICIA JOY ARCINIEGA


                                    By:_____
                                        LETICIA JOY ARCINIEGA
                                        IN PRO PER

DEFENDANT LETICIA ARCINIEGA'S COMENDIUM OF TRIAL EXHIBITS

1   D. EDWARD HAYS, #162507
    ehays@marshackhays.com
2   CHAD V. HAES, #267221
    chaes@marshackhays.com
3   MARSHACK HAYS LLP
    870 Roosevelt
4   Irvine, California 9262
    Telephone: (949) 333-7777
5   Facsimile: (949) 333-7778

6   Attorneys for Plaintiff,
    JAMES CLARK
7

8                  UNITED STATES BANKRUPTCY COURT

9          CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION

10  | In re                          | Case No. 6:11-bk-15412-SY |
11  | LETICIA JOY ARCINIEGA,         | Chapter 7 |
12  | Debtor.                        | Adv. No. 6:11-ap-01735-SY |
13  |                                | DIRECT TESTIMONY TRIAL DECLARATION OF PLAINTIFF JAMES A. CLARK |
14  | JAMES CLARK,                   | |
15  | Plaintiff,                     | TRIAL |
    |                                | Date:  March 17, 2015 |
16  | v.                             | Time:  9:30 a.m. |
    |                                | Ctrm:  304 |
17  | LETICIA JOY ARCINIEGA,         | |
18  | Defendant.                     | |

19  TO THE HONORABLE SCOTT H. YUN, UNITED STATES BANKRUPTCY COURT JUDGE,

20  THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

21          The following direct testimony Declaration of James A. Clark will be used in the trial of this

22  matter.

23  DATED: February 17, 2015           MARSHACK HAYS LLP
                                        /s/ Chad V. Haes
24                                      By: _____
25                                          D. EDWARD HAYS
                                            CHAD V. HAES
26                                          Attorneys for Plaintiff, JAMES CLARK

27

28

                                        1

### DECLARATION JAMES A. CLARK

I, JAMES A. CLARK, say and declare as follows:

1.    I am an individual over the age of eighteen and have personal knowledge of the facts set forth in this declaration.

2.    If called and sworn as a witness, I could and would competently testify to the facts set forth in this declaration.

3.    I am the Plaintiff ("Plaintiff") in this adversary proceeding.

4.    On February 29, 1976, Letitcia Joy Arciniega ("Defendant") and I were married.

5.    In 1979, Defendant and I bought real property commonly known as 3047 North Arrowhead Avenue, San Bernardino, California, 92405 ("Arrowhead Property").

6.    The loan on the Arrowhead Property was in the name of James Clark and the California Department of Veterans Affairs.

7.    On September 21, 1988, Defendant and I filed a chapter 7 bankruptcy petition, which was subsequently assigned bankruptcy case number SB-88-07322-JW.

8.    In 1991, Defendant and I bought real property commonly known as 890 Verona Avenue, San Jacinto, California, 92583 ("Verona Property").

9.    I am a Veteran of the Vietnam War.

10.    Defendant and I took out a Veterans Affairs loan ("VA Loan"), based on my status as a Veteran, to finance the purchase of the Verona property.

11.    Defendant and I were married at the time the VA Loan was taken out.

12.    The VA Loan is secured by a first-in-priority deed of trust against the Verona Property.

13.    On July 20, 2000, the marriage between Defendant and I was formally dissolved.

14.    On March 2, 2007, I filed an action against Defendant for declaratory relief, resulting trust, breach of oral contract, and specific performance ("Arrowhead Litigation") to affect transfer of title of the Arrowhead Property from me and Defendant jointly to me as my sole and separate property.

DIRECT TESTIMONY TRIAL DECLARATION OF JAMES A. CLARK

266880v1/1187-001

1    15.    On or about May 4, 2009 ("Settlement Agreement Date"), I entered into a written

2    settlement agreement ("Settlement Agreement") with Defendant effectively resolving the

3    Arrowhead Litigation.

4    16.    The Settlement Agreement provided, *inter alia,* that:

5    "Plaintiff will pay Settling Defendant the principal sum of Fifty
Thousand Dollars ($50,000). The settlement draft will be made
6    payable to defendant and her counsel of record. This payment is
due on Wednesday May 13, 2009, so long as all parties have
7    executed the settlement agreement and defendant has provided
plaintiff with a properly signed and notarized quitclaim deed
8    granting [illegible] interest in the Subject Property [the Arrowhead
Property] to plaintiff. Plaintiff is required to pay defendant $1,000
9    for each day that he is late in delivering the settlement funds to
defendant, so long as all the conditions set forth above are met.
10

11    "No later than May 13, 2010, defendant will take all necessary
measures to pay off the existing VA loan and removing (sic)
12    plaintiff's name from the loan on her property located at 890
Verona Avenue, Hemet, California. Defendant will not attempt to
13    assume the VA loan. Defendant agrees to pay plaintiff liquidated
damages at the rate of $1000 per day for everyday that she is late
14    in complying with this provision. Plaintiff will execute all
necessary documents so as to enable defendant effectuate (sic) the
15    removal of plaintiff's name from the loan on her property on (sic)
890 Verona, Hemet, CA."
16

17

18    17.    The Settlement Agreement is identified as Plaintiff's Exhibit 11 to the Joint Pre-

19    Trial Stipulation, filed as Dk. No. 60 in this Adversary Proceeding.

20    18.    I understood that under the Settlement Agreement there were two conditions to

21    my obligation to pay $50,000 to Defendant: all parties had to execute the Settlement Agreement;

22    and she had to convey her interest in the Arrowhead Property to me.

23    19.    I believe and believed at the time I signed the Settlement Agreement that the

24    $50,000 payment was not just to get Defendant to convey her interest in the Arrowhead Property

25    to me, but also to get her to sign the Settlement Agreement which required her to "pay off the

26    existing VA loan and removing (sic) plaintiff's name from the loan" on the Verona Property.

27    20.    I believe and believed these things at the time I signed the Settlement Agreement

28    because the Settlement Agreement specifically says that I was obliged to deliver the $50,000 "so

1    long as all parties have executed the settlement agreement" in addition to the other condition to

2    payment.

3    21.    It is and always was my understanding that, pursuant to the Settlement

4    Agreement, Defendant had until May 13, 2010, to pay off the VA Loan and remove my name

5    from the VA Loan.

6    22.    It is and always was my understanding that, pursuant to the Settlement

7    Agreement, if Defendant failed to pay off the VA Loan and remove my name on or before May

8    13, 2010, then Defendant was liable for liquidated damages at the rate of $1,000 per day for

9    every day she was late in complying.

10    23.    I never believed during the course of negotiating and executing the Settlement

11    Agreement that Defendant's responsibility to "take all necessary measures" to pay off the

12    existing loan and remove my name from the loan on the Verona Property meant that Defendant

13    had to *try* to do those things, but was not bound by the Settlement Agreement to actually do

14    those things.

15    24.    Nor did I or do I believe that the "take all necessary measures" language meant

16    that if Defendant *tried and failed* to pay off the existing loan and remove my name from the loan

17    on the Verona Property that the consequences provided in the Settlement Agreement would not

18    apply.

19    25.    I believed that Defendant was actually required to pay off the existing loan and

20    remove my name from the loan on the Verona Property or be subject to the same liquidated

21    damages to which I would have been subject had I not performed my obligations under the

22    Settlement Agreement.

23    26.    I insisted as a part of the Settlement Agreement that Defendant be precluded from

24    assuming the VA Loan.

25    27.    It was and is my understanding, from my own research and from my experience

26    in obtaining a VA Loan, that if a VA loan is assumed by a third-party, the veteran's "home loan

27    entitlement" is not restored.

28    / / /

4

DIRECT TESTIMONY TRIAL DECLARATION OF JAMES A. CLARK

28.    It was and is my understanding, again from my own research and from my experience in obtaining a VA Loan, that the veteran's "home loan entitlement" will not be restored until the loan is paid in full by the assumer.

29.    It was and is my understanding, again from my own research and from my experience in obtaining a VA Loan, that if the assumer defaults, the veteran will lose the entitlement until the assumer repays the VA for the loss suffered in foreclosure.

30.    As such, I did not wish to take the risk of losing my VA loan entitlement or being liable for any default of Defendant by allowing Defendant to assume the VA Loan.

31.    I therefore specifically negotiated in connection with the Settlement Agreement that Defendant would *not* attempt to assume the VA loan.

32.    The VA Guidelines described above are contained in **Plaintiff's Exhibit** 1 to the Joint Pre-Trial Stipulation, filed as Dk. No. 60 in this Adversary Proceeding.

33.    Because I wanted to regain my VA entitlements in full, when I entered into the Settlement Agreement, I did so relying on **Defendant's representation that she would take all** necessary measures to pay off the VA Loan and remove my name from the VA Loan on or before May 13, 2010.

34.    I relied on Defendant's representation that she would **pay liquidated** damages of $1,000 a day for each day that she failed to meet her respective deadlines when I entered into the Settlement Agreement.

35.    I believe Defendant executed the Settlement Agreement to induce me to pay her $50,000 with the knowledge she would not uphold her end of the bargained for exchange.

36.    As a result of **Defendant's** fraudulent conduct, to date I have incurred actual damages of approximately $186,000.

37.    This includes the $50,000 settlement amount **paid to Defendant and attorneys'** fees in the approximate amount of $156,000 to date, which does not include the attorneys' fees and expenses I will incur through trial in this case.

/ / /

/ / /

5

DIRECT TESTIMONY TRIAL DECLARATION OF JAMES A. CLARK

266880v1/1187-001

38.     I have also incurred liquidated damages in the total amount of $281,000, which constitutes $1,000 a day beginning on May 14, 2010, through and including February 18, 2011("Petition Date"), because there are 281 days between May 14, 2010, and the Petition Date.

39.     The Settlement Agreement provides that I had to pay "Settling Defendant" – *i.e.* Defendant – $50,000, to be delivered by May 13, 2009.

40.     On April 30, 2009, I obtained a cashier's check for $50,000 from Washington Mutual.

41.     That same day, I mailed the $50,000 cashier's check to Defendant through her counsel.

42.     The $50,000 cashier's check is identified as Plaintiff's Exhibit 69 to the Joint Pre-Trial Stipulation, filed as Dk. No. 60 in this Adversary Proceeding.

43.     Defendant has not paid off the VA Loan.

44.     Defendant has not removed my name from the loan and deed of trust recorded against the Verona Property.

45.     Based upon my review of correspondence between Defendant and CitiMortgage, Inc. ("CitiMortgage"), the first lienholder on the Verona Property, and certain affiliates of CitiMortgage ("Pre-Settlement Communications"), which correspondence was produced by Defendant in response to my discovery requests during the course of this litigation, I believe that Defendant's Pre-Settlement Communications were extensive.

46.     Although many of the correspondences from CitiMortgage and its affiliates were addressed to Defendant and myself jointly, such correspondences were addressed to the Verona Property and Defendant never provided me with copies of them prior to my discovery requests propounded in the course of this litigation.

47.     I have now had the opportunity to review the Pre-Settlement Communications, including but not limited to:

- The March 20, 2007, letter by Defendant to CitiMortgage (the "March 20, 2007 Letter"). (Joint Pre-Trial Stipulation ["JPS"], Defendant's Exhibit 2).

/ / /

DIRECT TESTIMONY TRIAL DECLARATION OF JAMES A. CLARK

266880v1/1187-001

- The December 11, 2008, letter received by Defendant from Springboard Nonprofit Consumer Credit Management ("December 11, 2008 Letter"). (JPS, Plaintiff's Exhibit 2).
- The January 17, 2009, letter received by Defendant from CitiMortgage Loss Mitigation Department ("January 17, 2009 Letter"). (JPS, Defendant's Exhibit 11).
- The January 22, 2009, letter received by Defendant from CitiMortgage's Loss Mitigation Department ("January 22, 2009 Letter"). The January 22, 2009 Letter was addressed to both Defendant and myself. (JPS, Plaintiff's Exhibit 3).
- The February 12, 2009, letter received by Defendant from CitiMortgage's Loss Mitigation Department ("February 12, 2009 Letter"). The February 12, 2009 Letter was addressed to both Defendant and myself. (JPS, Plaintiff's Exhibit 4).
- The March 17, 2009, letter received by Defendant from CitiMortgage ("March 17, 2009, Letter"). The March 17, 2009, Letter was addressed to both Defendant and myself. (JPS, Defendant's Exhibit 16).
- The April 13, 2009, letter received by Defendant from CitiMortgage's Loss Mitigation Department ("April 13, 2009 Letter"). The April 13, 2009 Letter was addressed to both Defendant and myself. (JPS, Defendant's Exhibit 19).
- The April 20, 2009, letter received by Defendant from CitiMortgage ("April 20, 2009 Letter"). The April 20, 2009 Letter was addressed to both the Defendant and myself. (JPS, Plaintiff's Exhibit 6).

48. I will not recite the content of the Pre-Settlement Communications here, or attempt to summarize them.

49. The Pre-Settlement Communications speak for themselves and are submitted as evidence in the trial of this litigation.

50. Notwithstanding the fact that most of the Pre-Settlement Communications were formally addressed to me, Defendant failed to disclose either the Pre-Settlement Communications or their content to me prior to the May 4, 2009, Settlement Agreement regarding the Arrowhead Litigation.

///

51.     Indeed, as stated above, I received copies of the Pre-Settlement Communications only in the course of litigating this adversary proceeding, and had not seen them or been provided copies of them before the commencement of this case.

52.     The Pre-Settlement Communications reflect that prior to execution of the Settlement Agreement, Defendant was in a dire financial situation.

53.     Had I been informed of the Pre-Settlement Communications and their content prior to entering into the Settlement Agreement with Defendant, I would not have entered into the Settlement Agreement, because I believe the Pre-Settlement Communications which Defendant received and to which she responded clearly show that Defendant had no ability to refinance the Verona Property or pay off the VA Loan, and that Defendant was not going to be able to simply remove my name from the loan on the Verona Property.

54.     Had I been informed of the Pre-Settlement Communications and their content prior to entering into the Settlement Agreement with Defendant, I would have believed Defendant knew she could not refinance or pay off the VA Loan, and that she was not going to be able to remove my name from the loan on the Verona Property.

55.     On or about March 13, 2007, more than two years prior to the May 4, 2009, execution of the Settlement Agreement, Defendant obtained a loan secured by a junior deed of trust on the Verona Property in the amount of $100,000 ("Second Mortgage").

56.     I became aware of the Second Mortgage only in the course of litigating this adversary proceeding, and had not known of it before the commencement of this case.

57.     Had I been informed of the Second Mortgage prior to entering into the Settlement Agreement with Defendant, I would not have entered into the Settlement Agreement, because I believe the Second Mortgage exhausted all equity in the Verona Property and reduced or eliminated Defendant's ability to refinance the Verona Property, pay off the VA Loan, and remove my name from the loan on the Verona Property.

58.     Had I been informed of the Second Mortgage prior to entering into the Settlement Agreement with Defendant, I would have believed Defendant knew she could not refinance or

DIRECT TESTIMONY TRIAL DECLARATION OF JAMES A. CLARK

266880v1/1187-001

1  pay off the VA Loan, and that she was not going to be able to remove my name from the loan on

2  the Verona Property.

3      59.    As far as I am aware, to date Defendant still has not paid off the VA Loan and

4  removed my name from any loan on the Verona Property.

5      I declare under penalty of perjury under the laws of the State of California that the

6  foregoing is true and correct, and that this declaration is executed on February 17, 2015, at

7  San Bernardino, California.

8

9                        JAMES A. CLARK

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

DIRECT TESTIMONY TRIAL DECLARATION OF JAMES A. CLARK

266880v1/1187-001

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt Avenue, Irvine, CA 92620

A true and correct copy of the foregoing document entitled (*specify*): **DIRECT TESTIMONY TRIAL DECLARATION OF PLAINTIFF JAMES A. CLARK** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **February 17, 2015**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **CHAPTER 7 TRUSTEE,** Karl T Anderson (TR) edansie@hotmail.com, kanderson@ecf.epiqsystems.com
- **ATTORNEYS FOR PLAINTIFF,** Sarah C Boone sboone@marshackhays.com, ecfmarshackhays@gmail.com
- **INTERESTED PARTY DOLORES ARCINIEGA,** Alan W Forsley awf@fl-lawyers.net, awf@fkllawfirm.com,addy@fl-lawyers.net,lc@fl-lawyers.net,awf@fl-lawyers.net
- **ATTORNEYS FOR PLAINTIFF,** Chad V Haes chaes@marshackhays.com, ecfmarshackhays@gmail.com
- **ATTORNEYS FOR PLAINTIFF,** D Edward Hays ehays@marshackhays.com, ecfmarshackhays@gmail.com
- **UNITED STATES TRUSTEE (RS)** ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) **February 17, 2015,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
**DEFENDANT, IN PRO PER**
Leticia Joy Arciniega
890 Verona Ave
San Jacinto, CA 92583
Telephone: (951) 654-1095; email: larcinie@verizon.net

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **February 17, 2015**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Via Personal Delivery – February 18, 2015
PRESIDING JUDGE'S COPY
Bankruptcy Judge Scott H. Yun
United States Bankruptcy Court - Central District of California
3420 Twelfth Street, Suite 345 / Courtroom 302
Riverside, CA 92501-3819

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 17, 2015 | Chanel Mendoza | */s/ Chanel Mendoza* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

Legal Tabs Co. 1-800-322-3022

Stock # EXA-5-B

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):

LETICIA ARCINIEGA

890 VERONA AVE.

SAN JACINTO, CA 92583
TELEPHONE NO.: (909) 654-5678          FAX NO.:

ATTORNEY FOR (Name): IN PRO PER

FOR COURT USE ONLY

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUL 20 2000

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
STREET ADDRESS: 880 N. STATE ST.
MAILING ADDRESS:
CITY AND ZIP CODE: HEMET, CA 92343
BRANCH NAME: MT. SAN JACINTO JUDICIAL DISTRICT

MARRIAGE OF
PETITIONER: LETICIA ARCINIEGA

RESPONDENT: JAMES CLARK

| JUDGMENT | CASE NUMBER: |
|---|---|
| [X] Dissolution   [ ] Legal separation   [ ] Nullity<br>[ ] Status only<br>[ ] Reserving jurisdiction over termination of marital status<br>[ ] Judgment on reserved issues<br>Date marital status ends: JUL 20 2000 | HED 002318 |

1. [X] This judgment [ ] contains personal conduct restraining orders [ ] modifies existing restraining orders.
   The restraining orders are contained on page(s) _____ of attachment. They expire on (date):

2. This proceeding was heard as follows: [X] default or uncontested [X] by declaration under Fam. Code, § 2336
   [ ] contested
   a. Date: JUL 20 2000      Dept.: 45      Rm.:
   b. Judicial officer (name):                    [X] Temporary judge      Sherrill A. Ellsworth
                                                  Commissioner
   c. [ ] Petitioner present in court            [ ] Attorney present in court (name):
   d. [ ] Respondent present in court            [ ] Attorney present in court (name):
   e. [ ] Claimant present in court (name):      [ ] Attorney present in court (name):
   f. [ ] Other (specify name):

3. The court acquired jurisdiction of the respondent on (date): 12-3-99
   [X] Respondent was served with process    [ ] Respondent appeared

4. THE COURT ORDERS, GOOD CAUSE APPEARING:
   a. [X] Judgment of dissolution be entered. Marital status is terminated and the parties are restored to the status of unmarried persons
      (1) [X] on the following date (specify): JUL 20 2000
      (2) [ ] on a date to be determined on noticed motion of either party or on stipulation.
   b. [ ] Judgment of legal separation be entered.
   c. [ ] Judgment of nullity be entered. The parties are declared to be unmarried persons on the ground of (specify):

   d. [ ] This judgment shall be entered nunc pro tunc as of (date):
   e. [ ] Judgment on reserved issues.
   f. [ ] Wife's [ ] Husband's former name be restored (specify):
   g. [ ] Jurisdiction is reserved over all other issues and all present orders remain in effect except as provided below.
   h. [ ] This judgment contains provisions for child support or family support. Both parties shall complete and file with the court a Child Support Case Registry Form (form 1285.92) within 10 days of the date of this judgment. The parents shall notify the court of any change in the information submitted within 10 days of the change by filing an updated form. The forms Notice of Rights and Responsibilities (form 1285.78) and Information Sheet on Changing a Child Support Order (form 1285.79) are attached.

(Continued on reverse)

Form Adopted for Mandatory Use
Judicial Council of California
Rule 1287 [Rev. July 1, 1999]

JUDGMENT
(Family Law)

Family Code,
§§ 2340, 2343, 2346



Recording Requested By:
GREATER ATLANTIC MORTGAGE
CORPORATION

Prepared by:
~~And After Recording Return To:~~

GREATER ATLANTIC MORTGAGE
CORPORATION
8230 OLD COURTHOUSE RD, SUITE
520
VIENNA,VIRGINIA 22182
Loan Number 20021535

WHEN RECORDED RETURN TO:
Old Republic Title
Attn: InstantTitle
320 Springside Dr.
Suite 320
Akron, OH 44333
2099764-R

DOC # 2003-895484
11/13/2003 08:00A Fee:96.00
Page 1 of 30
Recorded in Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|----|----|-------|-----|-------|
|   |   |   | 30   |      |    |      |       |     |       |
| A | R | L |      |      |    | COPY | LONG | REFUND | NCHG | EXAM |

[Space Above This Line For Recording Data]

Case Number 77-77-6-5083460   **DEED OF TRUST**

# THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

MIN: 1002195-0002005479-1

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A)  "Security Instrument" means this document, which is dated  FEBRUARY  27  , 2003 , together with all Riders to this document.
(B)  "Borrower" is JAMES A. CLARK AND LETICIA J. ARCINIEGA, AS COMMUNITY PROPERTY

Borrower is the trustor under this Security Instrument.
(C)  "Lender" is GREATER ATLANTIC MORTGAGE CORPORATION

Lender is a                                                                                           organized
and existing under the laws of MARYLAND
Lender's address is 8230 OLD COURTHOUSE RD, SUITE 520, VIENNA, VIRGINIA 22182
(D)  "Trustee" is OLD REPUBLIC NATIONAL TITLE INSURANCE

CALIFORNIA--Single Family--UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)                                    Page 1 of 12

DocMagic eFes 800-649-1362
www.docmagic.com

Cadotzl.vs

(E)   "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI  48501-2026, tel. (888) 679-MERS.

(F)   "Note" means the promissory note signed by Borrower and dated   **FEBRUARY 27      ,2003** .  The Note states that Borrower owes Lender   **ONE HUNDRED THOUSAND FIVE HUNDRED AND 00/100**                  Dollars (U.S. $ **100,500.00**         ) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **MARCH 1, 2028**

(G)   "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)   "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | **Assumption Rider** |

(J)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)   "Escrow Items" means those items that are described in Section 3.

(N)   "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)   "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

CALIFORNIA--Single Family--UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)                                                 Page 2 of 12





*DocMagic* 800-649-1362
www.docmagic.com

Cadotz2.vm

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

<div align="center">

COUNTY of RIVERSIDE

</div>

[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

THE FOLLOWING DESCRIBED REAL PROPERTY IN THE CITY OF SAN JACINTO, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA: LOT 81 OF TRACT 21900-1, AS SHOWN BY MAP ON FILE IN BOOK 187 PAGE 93 THROUGH 97 OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.



Tax ID# 433 393-038 8

which currently has the address of   890 VERONA AVENUE

[Street]

SAN JACINTO          , California   92583                ("Property Address"):

[City]                        [Zip Code]



TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1.    Payment of **Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights

CALIFORNIA- Single Family--UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)                    Page 3 of 12

DocMagic *EForms* 800-649-1362
www.docmagic.com

Cadotz3.vs

hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds,



DocMagic *eForms* 800-649-1362
www.docmagic.com

CadotzA vs

Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal

CALIFORNIA--Single Family--UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)                                    Page 5 of 12

DocMagic *EⒻⓇⓜⓢ* 800-849-1362
www.docmagic.com



notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

CALIFORNIA--Single Family--UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)                                      Page 6 of 12

DocMagic EForms  800-649-1362
www.docmagic.com

Ca6dotz6.va



9.    **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.    **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether

DocMagic *ERorms* 800-649-1362
www.docmagic.com

Csdotz7.va

or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

11.   **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

12.   **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

13.   **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

14.   **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender

CALIFORNIA--Single Family--UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)                                    Page 8 of 12

*DocMagic* *eForms* 800-649-1362
www.docmagic.com

Csdotz8.va



specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

15.     **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

16.     **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

17.     **Transfer of the Property; Acceleration; Assumption.** This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code. The acceptability of any assumption shall also be subject to the following additional provisions:

(a)     **Funding Fee:** A fee equal to one-half of 1 percent of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729(c).

(b)     **Processing Charge:** Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

(c)     **Indemnity Liability Assumption:** If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

If the acceptability of the assumption of this loan is not established for any reason, and Lender exercises its option to declare all sums secured by this Security Instrument immediately due and payable, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18.     **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including,

CALIFORNIA--Single Family--UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)                    Page 9 of 12



DocMagic *eForms* 800-649-1362
www.docmagic.com

Ca9dot9 va

but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

19.   **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

20.   **Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that

DocMagic *eForms* 800-649-1362
www.docmagic.com

Cadotz10.va



any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21.    **Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Trustee shall cause this notice to be recorded in each county in which any part of the Property is located.  Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law.  Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law.  After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines.  Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied.  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.  Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

22.    Reconveyance.  Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee.  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it.  Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.  If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

23.    Substitute Trustee.  Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located.  The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.  Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law.  This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

24.    Statement of Obligation Fee.  Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA--Single Family--UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)                                    Page 11 of 12

DocMagic *eForms* 800-649-1362
www.docmagic.com

Cadotz11.va

## NOTICE TO BORROWER

Department of Veterans Affairs regulations at 38 C.F.R. 36.4334 provide as follows:

"Regulations issued under 38 U.S.C. Chapter 37 and in effect on the date of any loan which is submitted and accepted or approved for a guaranty or for insurance thereunder, shall govern the rights, duties, and liabilities of the parties to such loan and any provisions of the loan instruments inconsistent with such regulations are hereby amended and supplemented to conform thereto."

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)      _____ (Seal)
JAMES A. CLARK            -Borrower      LETICIA J. ARCINIEGA      -Borrower

_____ (Seal)      _____ (Seal)
-Borrower                          -Borrower

_____ (Seal)      _____ (Seal)
-Borrower                          -Borrower

Witness:                          Witness:

_____         _____

State of California              )
                                 ) ss.
County of RIVERSIDE              )

On February 27, 2003 before me, Vickie S. Painter, Notary Public

personally appeared   JAMES A. CLARK, LETICIA J. ARCINIEGA

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
NOTARY SIGNATURE

Vickie S. Painter
(Typed Name of Notary)

VICKIE S. PAINTER
COMM. #1251362
Notary Public-California
SAN BERNARDINO COUNTY
My Comm. Exp. Feb. 20, 2004

CALIFORNIA--Single Family--UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)                    Page 12 of 12

DocMagic eForms 800-649-1362
www.docmagic.com

Cadotz12.vm

LOAN NO. 20021535

# VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS ASSUMPTION POLICY RIDER is made this **27TH** day of **FEBRUARY**, **2003**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt ("Instrument") of the same date herewith, given by the undersigned ("Borrower") to secure the Borrower's Note ("Note") of the same date to
**GREATER ATLANTIC MORTGAGE CORPORATION**

its successors and assigns

("Lender") and covering the property described in the Instrument and located at:

**890 Verona Avenue
San Jacinto, CA  92583**

[Property Address]

Notwithstanding anything to the contrary set forth in the Instrument, Lender and Borrower hereby acknowledge and agree to the following:

VA GUARANTEED LOAN COVENANT: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties, and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instrument executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 17 of the Security Instrument, are hereby amended or negated to the extent to conform such instruments to said Title or Regulations.

**VA Guaranteed Loan and Assumption Policy Rider**
VAASSUMP 05/95 (VA438 Rev. 10/94)

**Page 1 of 3**



2003-895484
11/13/2003 08:00A
13 of 36

LATE CHARGE: At Lender's option, Borrower will pay a "late charge" not exceeding four per centum (4%) of the overdue payment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

GUARANTY: Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits", the Lender may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action provided by law.

TRANSFER OF THE PROPERTY: If all or any part of the Property or any interest in it is sold or transferred, this loan may be declared immediately due and payable upon transfer ("assumption") of the property securing such loan to any transferee ("assumer"), unless the acceptability of the assumption and transfer of this loan is established by the Department of Veterans Affairs or its authorized agent pursuant ot Section 1814 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

(a) ASSUMPTION FUNDING FEE: A fee equal to one-half of 1 percent (.50%) of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the Lender or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the Lender of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729(b).

(b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the Lender or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

(c) ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan, including the obligation of the veteran to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

(d) The Borrower futher agrees that should this Security Instrument and the note secured hereby not be eligible for guarantee under the Servicemen's Readjustment Act of 1944 as amended within 90 days from the date hereof (written statement of any officer of the Department of Veterans Affairs or authorized agent of the Department of Veterans Affairs dated subsequent to the 90 days time from the date of this security instrument, declining to guarantee said note and this mortgage, being deemed conclusive proof of such ineligibility), the Lender or the Holder of the note may at its option declare all sums secured hereby immediately due and payable.

**VA Guaranteed Loan and Assumption Policy Rider**
VAASSUMP 05/95 (VA438 Rev. 10/94)            **Page 2 of 3**



2003-895484
11/13/2003 00:00A
14 of 30

(c) ASSUMPTION OF ARM LOAN: If an applicant is approved by the Department of Veterans Affairs to assume a VA ARM Loan, they must be provided with the VA Adjustable Rate Mortgage Disclosure Statement.

IN WITNESS WHEREOF, Borrower(s) has executed this Assumption Policy Rider.

_____ (Seal)
James A. Clark          -Borrower

_____ (Seal)
Leticia J. Arciniega     -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

**VA  Guaranteed Loan and Assumption Policy Rider**
VAASSUMP 05/95 (VA438 Rev. 10/94)

**Page 3 of 3**

Recording Requested By:
GREATER ATLANTIC MORTGAGE
CORPORATION

And After Recording Return To:
GREATER ATLANTIC MORTGAGE CORPORATION
8230 OLD COURTHOUSE RD, SUITE 520
VIENNA, VIRGINIA 22182
Loan Number: 20021535
Case Number: 77-77-6-5083460

Under the provisions of Government Code 27361.7,
I hereby certify under penalty of perjury that the
foregoing is true and correct.

Executed this ___13___ day of __Nov__, 20_03_

at _Riverside_____, California.

_____
Signature



──────── [Space Above This Line For Recording Data] ────────

## DEED OF TRUST

# THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

MIN: 1002195-0002005479-1

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A)** "Security Instrument" means this document, which is dated    FEBRUARY 27, 2003    , together with all Riders to this document.
**(B)** "Borrower" is JAMES A. CLARK AND LETICIA J. ARCINIEGA, AS COMMUNITY PROPERTY

Borrower is the trustor under this Security Instrument.
**(C)** "Lender" is GREATER ATLANTIC MORTGAGE CORPORATION

Lender is a                                                                    organized
and existing under the laws of MARYLAND
Lender's address is 8230 OLD COURTHOUSE RD, SUITE 520, VIENNA, VIRGINIA 22182
**(D)** "Trustee" is OLD REPUBLIC NATIONAL TITLE INSURANCE
5700 EXECUTIVE DRIVE, BALTIMORE, MARYLAND 21228

DocMagic eFormns 800-649-1362
www.docmagic.com

Cadotti1.va

**(E)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** **"Note"** means the promissory note signed by Borrower and dated **FEBRUARY 27, 2003** .
The Note states that Borrower owes Lender ONE HUNDRED THOUSAND FIVE HUNDRED AND
00/100                                       Dollars (U.S. $ 100,500.00              )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **MARCH 01, 2028** .

**(G)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider                 ☐ Second Home Rider
☐ Balloon Rider             ☐ Planned Unit Development Rider    ☒ Other(s) [specify]
☐ 1-4 Family Rider          ☐ Biweekly Payment Rider           ASSUMPTION RIDER

**(J)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** **"Escrow Items"** means those items that are described in Section 3.

**(N)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

CALIFORNIA-Single Family-UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)                                   Page 2 of 13

*DocMagic* *eRorms* 800-649-1362
www.docmagic.com

Cadotr2.vz

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                    of                    RIVERSIDE                    :
[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]

THE FOLLOWING DESCRIBED REAL PROPERTY IN THE CITY OF SAN JACINTO, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA: LOT 81 OF TRACT 21900-1, AS SHOWN BY MAP ON FILE IN BOOK 187 PAGE 93 THROUGH 97 OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

which currently has the address of 890 VERONA AVENUE

                                                                [Street]
SAN JACINTO          , California          92583          ("Property Address"):
        [City]                                      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
     1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
     Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender

Cadotz3.vs

may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   **2.   Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   **3.   Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

CALIFORNIA–Single Family–UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)                                    Page 4 of 13

DocMagic *e*Forms  800-649-1362
www.docmagic.com

Cadotz4.va

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Cadotz5.va

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds.  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters.  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim.  The 30-day period will begin when the notice is given.  In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property.  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition.  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

Cadotr6.va

**8.  Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.  Assignment of Miscellaneous Proceeds; Forfeiture.**  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums

DocMagic *eForms* 800-649-1362
www.docmagic.com

Cadoctz7.vs

secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any

prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

14. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

15. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

16. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

17. **Transfer of the Property; Acceleration; Assumption.** This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code. The acceptability of any assumption shall also be subject to the following additional provisions:

(a) **Funding Fee:** A fee equal to one-half of 1 percent of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729(c). (Note: The funding fee for loans assumed between 12/13/02 and 09/30/03 will be 1 percent.)

(b) **Processing Charge:** Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

(c) **Indemnity Liability Assumption:** If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

Cadott9.va

If the acceptability of the assumption of this loan is not established for any reason, and Lender exercises its option to declare all sums secured by this Security Instrument immediately due and payable, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in

CALIFORNIA-Single Family-UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)                                Page 10 of 13

DocMagic *ERurms* 800-649-1362
www.docmagic.com

Cadotr10.va

Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this

CALIFORNIA-Single Family-UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)                    Page 11 of 13

DocMagic EForms  800-649-1362
www.docmagic.com

Cadotr11.va

Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**23. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**24. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

## NOTICE TO BORROWER

**Department of Veterans Affairs regulations at 38 C.F.R. 36.4334 provide as follows:**

**"Regulations issued under 38 U.S.C. Chapter 37 and in effect on the date of any loan which is submitted and accepted or approved for a guaranty or for insurance thereunder, shall govern the rights, duties, and liabilities of the parties to such loan and any provisions of the loan instruments inconsistent with such regulations are hereby amended and supplemented to conform thereto."**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.





| | |
|---|---|
| _____ (Seal) | _____ (Seal) |
| JAMES A. CLARK          -Borrower | LETICIA J. ARCINIEGA     -Borrower |
| | |
| _____ (Seal) | _____ (Seal) |
|                         -Borrower |                          -Borrower |
| | |
| _____ (Seal) | _____ (Seal) |
|                         -Borrower |                          -Borrower |

Witness:                                Witness:

_____                _____

CALIFORNIA-Single Family-UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)                          Page 12 of 13

DocMagic *eFerms* 800-649-1362
www.docmagic.com

Cadotz12.vu

2003-895484
11/13/2003 09:00A
27 of 39

State of California                              )
                                                ) ss.
County of RIVERSIDE                             )

    On                                  before me,

personally appeared  JAMES A. CLARK, LETICIA J. ARCINIEGA

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                                          NOTARY SIGNATURE

                                          (Typed Name of Notary)

       NOTARY SEAL



2093-995484
11/13/2093 88:668
28 of 39

CALIFORNIA-Single Family-UNIFORM INSTRUMENT
MODIFIED FOR DEPARTMENT OF VETERANS AFFAIRS - MERS
(Rev. 1/01)                        Page 13 of 13

DocMagic eForms  800-649-1362
www.docmagic.com

Cadotz13.va

Loan Number: 20021535
Case Number: 77-77-6-5083460

## VA ASSUMPTION POLICY RIDER

# THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT

THIS ASSUMPTION POLICY RIDER is made this   27th day of   FEBRUARY 2003   , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt ("Instrument") of the same date herewith, given by the undersigned ("Mortgagor") to secure the Mortgagor's Note ("Note") of the same date to   GREATER ATLANTIC MORTGAGE CORPORATION
("Mortgagee") and covering the property described in the Instrument and located at:

890 VERONA AVENUE, SAN JACINTO, CALIFORNIA 92583
(Property Address)

Notwithstanding anything to the contrary set forth in the Instrument, Mortgagee and Mortgagor hereby acknowledges and agrees to the following:

GUARANTY: Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits", the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

TRANSFER OF THE PROPERTY:  If all or any part of the Property or any interest in it is sold or transferred, this loan shall be immediately due and payable upon transfer ("assumption") of the property securing such loan to any transferee ("assumer"), unless the acceptability of the assumption and transfer of this loan is established by the Department of Veterans Affairs or its authorized agent pursuant to section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

---



2003-895484
11/13/2003 08:00A
29 of 30

Vaprl.rdr

**(a) ASSUMPTION FUNDING FEE:** A fee equal to one-half of 1 percent (.50%) of the unpaid principal balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the mortgagee or its authorized agent, as trustee for the Secretary of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the mortgagee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (b). **(Note: The funding fee for loans assumed between 12/13/02 and 9/30/03 will be 1 percent.)**

**(b) ASSUMPTION PROCESSING CHARGE:** Upon application for approval to allow assumptions and transfer of this loan, a processing fee may be charged by the mortgagee or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which section 3714 of Chapter 37, Title 38, United States Code applies.

**(c) ASSUMPTION INDEMNITY LIABILITY:** If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan, including the obligation of the veteran to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

IN WITNESS WHEREOF, Mortgagor(s) has executed this Assumption Policy Rider.

_____(Seal)          _____(Seal)
JAMES A. CLARK              Mortgagor     LETICIA J. ARCINIEGA    Mortgagor


_____(Seal)          _____(Seal)
                           Mortgagor                            Mortgagor


_____(Seal)          _____(Seal)
                           Mortgagor                            Mortgagor


VA ASSUMPTION POLICY RIDER

Page 2 of 2

DocMagic *Forms* 800-649-1362
www.docmagic.com



2003-895484
11/13/2003 08:008
30 of 30

Vapr2.rdr

Legal Tabs Co. 1-800-322-3022

Stock # EXA-5-B



DOC # 2004-0297281
04/23/2004 08:00A Fee:60.00
Page 1 of 18
Recorded in Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder

**RECORDING REQUESTED BY**
**ALLIANCE TITLE COMPANY**

Return to:
A E G I S   W H O L E S A L E
CORPORATION
3250 BRIARPARK DRIVE, #400
HOUSTON, TX  77042-4204

74116

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|----|----- |-------|-----|-------|
|   | 1 |   | 18   |      | 1  |      |       |     | M     |
| A | R | L |      |      |    | COPY | LONG  | REFUND | NCHG | EXAM |

[Space Above Thi...]

Loan No:  3000623356
Borrower:  JAMES A. CLARK

Data I.D.: 722

## DEED OF TRUST

VA Case No.  77-77-6-5091489

MIN: 100053030006233564

T MA

# THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated April 13, 2004, together with all Riders to this document.

**(B) "Borrower"** is JAMES A. CLARK AND  LETICIA J. ARCINIEGA , HUSBAND AND WIFE, AS COMMUNITY PROPERTY  .  Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is AEGIS WHOLESALE CORPORATION.  Lender is A CORPORATION organized and existing under the laws of the State of DELAWARE.  Lender's address is 3250 BRIARPARK DRIVE, SUITE 400, HOUSTON, TEXAS  77042.

**(D) "Trustee"** is COMMONWEALTH LAND TITLE.

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the beneficiary under this Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**CALIFORNIA VA DEED OF TRUST**          Form 3005   1/01          *(Page 1 of 16 Pages)*



30006233560130

(F) **"Note"** means the promissory note signed by Borrower and dated April 13, 2004. The Note states that Borrower owes Lender **ONE HUNDRED FOUR THOUSAND NINE HUNDRED FORTY-NINE and NO/100-----Dollars (U.S. $ 104,949.00)** plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **May 1, 2019.**

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider       ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider               ☐ Planned Unit Development Rider
☐ 1-4 Family Rider            ☐ Biweekly Payment Rider
☒ Other(s) [specify] Assumability Policy Rider

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**CALIFORNIA VA DEED OF TRUST**          Form 3005   1/01          *(Page 2 of 16 Pages)*

Loan No: 3000623356

Data ID: 922

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of RIVERSIDE:

LOT 81 OF TRACT 21900-1, AS SHOWN BY MAP RECORDED IN BOOK 187, PAGES 93 TO 97, INCLUSIVE OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

which currently has the address of 890   VERONA AVENUE,
[Street]
SAN JACINTO, CALIFORNIA                          92583         ("Property Address"):
[City]                                           [Zip Code]

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**CALIFORNIA VA DEED OF TRUST**          Form 3005   1/01      *(Page 3 of 16 Pages)*

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.
2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**CALIFORNIA VA DEED OF TRUST**          Form 3005   1/01       *(Page 4 of 16 Pages)*

Loan No: 3000623356                                                    Data ID: 922

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**CALIFORNIA VA DEED OF TRUST**          Form 3005   1/01          (Page 5 of 16 Pages)

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

**CALIFORNIA VA DEED OF TRUST**     Form 3005   1/01     *(Page 6 of 16 Pages)*

Loan No: 3000623356                                                      Data ID: 922

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**CALIFORNIA VA DEED OF TRUST**          Form 3005   1/01        *(Page 7 of 16 Pages)*

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**CALIFORNIA VA DEED OF TRUST**          Form 3005   1/01          *(Page 8 of 16 Pages)*

Loan No: 3000623356                                      Data ID: 922

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**CALIFORNIA VA DEED OF TRUST**          Form 3005   1/01      *(Page 9 of 16 Pages)*

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**CALIFORNIA VA DEED OF TRUST**         Form 3005   1/01       *(Page 10 of 16 Pages)*

Loan No: 3000623356                                          Data ID: 922

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**CALIFORNIA VA DEED OF TRUST**        Form 3005   1/01      *(Page 11 of 16 Pages)*

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.


**CALIFORNIA VA DEED OF TRUST**          Form 3005   1/01      *(Page 12 of 16 Pages)*

Loan No: 3000623356                                                    Data ID: 922

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**CALIFORNIA VA DEED OF TRUST**          Form 3005   1/01        *(Page 13 of 16 Pages)*

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**CALIFORNIA VA DEED OF TRUST**          Form 3005   1/01      *(Page 14 of 16 Pages)*

Loan No: 3000623356                                            Data ID: 922

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**CALIFORNIA VA DEED OF TRUST**          Form 3005   1/01       (Page 15 of 16 Pages)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_James A. Clark_ ..............................................(Seal)
JAMES A. CLARK —Borrower

..............................................(Seal)
LETICIA J. ARCINIEGA —Borrower

——————————— [Space Below This Line For Acknowledgment] ———————————

State of  CALIFORNIA                              §
County of  ~~ORANGE~~ _Riverside_                §

On _April 19_ , 20_04_, before me, _Nadine Park_ , a Notary Public, personally appeared
JAMES A. CLARK AND LETICIA J. ARCINIEGA
☐ personally known to me
OR
☒ proved to me on the basis of satisfactory evidence

to be the persons whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument.

WITNESS my hand and official seal.

[Seal]

NADINE PARK
Commission # 1334410
Notary Public - California
Orange County
My Comm. Expires Jan 8, 2006

_Nadine Park_

Notary Public

_Nadine Park_
(Printed Name)

My commission expires:_____ _1/8/06_

**CALIFORNIA VA DEED OF TRUST**          Form 3005  1/01     *(Page 16 of 16 Pages)*

Loan No:  3000623356
Borrower:  JAMES A. CLARK

Data ID:  922

## ASSUMABILITY POLICY RIDER

THIS ASSUMABILITY POLICY RIDER is made on this 13th day of April, 2004, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, Deed to Secure Debt or other such security instrument (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note(s) (the "Note") to

AEGIS WHOLESALE CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument (the "Property") and located at:

890   VERONA AVENUE
SAN JACINTO, CALIFORNIA  92583

In addition to the covenants and agreements made in the Security Instrument, Borrower further covenants and agrees as follows:

**1.    Acceleration.**  The Note may, at the option of the Lender or the holder of the Note or its authorized agent (collectively, the "Note Holder"), become immediately due and payable upon transfer of the Property to any transferee, unless the acceptability of the assumption of the Note obligation is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

**2.    Funding Fee.**  A fee equal to one-half of one percent (0.5%) of the balance of the Note as of the date of transfer of the Property shall be payable to the Note Holder, as trustee for the Department of Veterans Affairs.  If the assuming transferee fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by the Security Instrument, shall bear interest at the rate provided in the Note, and, at the option of the Note Holder, shall be immediately due and payable.  This fee is automatically waived if the assuming transferee is exempt under Section 3729(c) of Chapter 37, Title 38, United States Code.

**3.    Processing Charge.**  Upon application for approval to allow assumption of the Note obligation, a processing fee may be charged by the Note Holder for determining the creditworthiness of the assuming transferee and subsequently revising the Note Holder's ownership records when an approved transfer of the Property is completed.  The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code, applies.

**4.    Indemnity Liability.**  If the Note obligation is assumed, the assuming transferee shall agree to assume all of the obligations of the Borrower under the terms of the Note, the Security Instrument and any other instruments creating or securing the Note, including the obligation of the Veteran to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created or evidenced by the Note or Security Instrument.

**VA DUE ON SALE**                                                                                       *Page 1 of 2*



30006233560135

All other terms and provisions of the Security Instrument and any riders thereto shall remain in full force and effect.

By Signing Below, Borrower accepts and agrees to the terms and covenants contained in this Assumability Policy Rider.

.......................................................................(Seal)
JAMES A. CLARK —Borrower

.......................................................................(Seal)
LETICIA J. ARCINIEGA —Borrower

*Page 2 of 2*

Stock # EXA-5-B

Arrowhead *1991

| NAME AND MAILING ADDRESS | TAX RATE AREA | PARCEL | LAND | IMPROVEMENTS | PERSONAL PROPERTY | EXEMPTIONS | NET TAXABLE |
|---|---|---|---|---|---|---|---|
| TAYLOR, CAROLEE B<br>7055 DEICN AVE<br>SAN BERNARDINO CA 92405<br>TRACT NO 1969 RIVIERE S 31.50 FT LOT<br>10 AND N 23.5 FT LOT 11 | 7031 | 0152 211 15<br>0152 211 15 0 000<br>RF=R | 21648 | 54121 | | 8187 | 75769 |
| MOTO-ARS, BETT A<br>7035 N ARROWHEAD AVE<br>SAN BERNARDINO CA 92405<br>TR NO 1969 PLAZA RIVIERE LOT 9 AND N 8 1<br>/2 FT LOT 10 | 7031 | 0152 211 16<br>0152 211 16 0 000<br>EXEMP 00 RF=R | 11486 | 51691 | | 7000<br>8185 | 56177 |
| SIEBER, FAITH E<br>3039 N ARROWHEAD AVE<br>SAN BERNARDINO CA 92405<br>TRACT NO 1969 PLAZA RIVIERE LOT 8 | 7031 | 0152 211 17<br>0152 211 17 0 000<br>EXEMP 00 RF=R | 20808 | 75070 | | 7320<br>8189 | 92878 |
| CLARK, JAMES A<br>ARRIVEGA CLEICIA J<br>3041 N ARROWHEAD AVE<br>SAN BERNARDINO CA 92405<br>TRACT NO 1969 PLAZA RIVIERE LOT 7 | 7031 | 0152 211 18<br>0152 211 18 0 000<br>EXEMP 00 RF=R 3<br>8191 | 6659 | 107571 | | 7320 | 107210 |
| SHIPPAY, LARRY ETAL<br>SHIPPAY, ANDREA<br>3043 N ARROWHEAD AVE<br>SAN BERNARDINO CA 92405<br>TRACT NO 1969 PLAZA RIVIERE LOT 6 | 7031 | 0152 211 19<br>0152 211 19 0 000<br>EXEMP 00 RF=R T<br>8191 | 12693 | 71090 | | 7320 | 76769 |
| BATTILLO, MARK C<br>3045 N ARROWHEAD AVE<br>SAN BERNARDINO CA 92405<br>TRACT NO 1969 PLAZA RIVIERE LOT 5 | 7031 | 0152 211 20<br>0152 211 20 0 000<br>RM=R<br>8191 | 22082 | 57810 | | 22520 | 79692 |
| PAGE TOTALS | | | 95361 | 421353 | | | 429714 |

| TAXPAYERS EXEMPTIONS | TAX RATE AREA | PARCEL | LAND | IMPROVEMENTS | PERSONAL PROPERTY | EXEMPTIONS | NET TAXABLE |
|---|---|---|---|---|---|---|---|
| BONEY, ALFRED W<br>3051 N ENCINA AVE<br>SAN BERNARDINO CA 92405<br>TRACT NO 1969 PLAZA RIVIERE LOT 4 | 7031 | 0152 211 21<br>0152 211 21 0 000<br>RF=R<br>8192 | 26510 | 87914 | | 7020 | 113924 |
| WEST, JOAN N<br>3029 N ARROWHEAD AVE<br>SAN BERNARDINO CA 92405<br>TR NO 1969 PLAZA RIVIERA LOT 3 | 7031 | 0152 211 22<br>0152 211 22 0 000<br>EXEMP 00 8175 | 7098 | 16650 | | | 16943 |
| NAVARRO, RUBEN | 7031 | 0152 211 23<br>0152 211 23 0 000 | | | | | |

FORM OF AVAILABLE REAL PROPERTY BY THE SAN BOARD OF EQUALIZATION
PRELIMINARY ASSESSED PERCENTAGE OF PROPERTY IN THE COUNTY ON SALES INCREASED CAR
PRINCIPALLY ASSESSED EXPLANATION OF DISCONTINUANCE AND STATUTORY PROVISIONS
SECURED ROLL
FORM IN TAILED TAX EXPLANATION WORK ALL RECORDS ADD HERALD, SEE PAGE A

1992 —

FORM OF ASSESSMENT ROLL APPROVED BY THE STATE BOARD
PRELIMINARY ASSESSMENT ROLL OF PROPERTY IN THE COUNTY OF
PROPERTY ASSESSED PURSUANT TO CONSTITUTIONAL AND ST
SECURED ROLL
FOR DETAILED EXPLANATION OF ALL HEADINGS AND ENT

| Name, address and description of property | Tax rate area | Parcel | Land | Improvements | Personal property | Exemptions homeowners | Exemptions other | Total taxable value | Line |
|---|---|---|---|---|---|---|---|---|---|
| 3039 N ARROWHEAD AVE<br>SAN BERNARDINO, CA 92405<br>TRACT NO 1969 PLAZA RIVIERE LOT 8 | | 0152 211 17 0 000<br>DR= R RFC=<br>EXEM= 00 | | | | | | | |
| | | 0152 211 17 BY69 | 21224 | 80651 | | 7000 | | 94875 | 24 |
| * CLARK, JAMES A<br>ARCINIEGA, LETICIA J<br>3047 N ARROWHEAD AVE<br>SAN BERNARDINO, CA 92405<br>TRACT NO 1959 PLAZA RIVIERE LOT 7 | 7001 | 0152 211 18<br>0152 211 18 0 000<br>DR= R RFC= 3<br>EXEM= 00 | | | | | | | 29 |
| | | 0152 211 18 BY92 | 6772 | 124202 | | 7000 | | 123974 | |
| SHIPMAN, BARRY ETAL<br>SHIPMAN, NOEL<br>3055 N ARROWHEAD AVE<br>SAN BERNARDINO, CA 92405<br>TRACT NO 1969 PLAZA RIVIERE LOT 6 | 7001 | 0152 211 19<br>0152 211 19 0 000<br>DR= R RFC= R<br>EXEM= 00 | | | | | | | 36 |
| | | 0152 211 19 BY79 | 6772 | 63013 | | 7000 | | 62785 | 42 |
| DATTILO, MITCHELL A<br>DATTILO, DONEE E<br>3063 N ARROWHEAD AVE<br>SAN BERNARDINO, CA 92405<br>TR NO 1969 PLAZA RIVIERE LOT 5 | 7001 | 0152 211 20<br>0152 211 20 0 000<br>DR= R RFC= T | | | | | | | 48 |
| | | 0152 211 20 BY92 | 28000 | 87000 | | | | 115000 | |
| | | PAGE TOTALS | 96565 | 462794 | | 28000 | | 5?1359 | 51 |

FORM OF ASSESSMENT ROLL APPROVED BY THE STATE BOARD
PRELIMINARY ASSESSMENT ROLL OF PROPERTY IN THE COUNTY OF
PROPERTY ASSESSED PURSUANT TO CONSTITUTIONAL AND
SECURED ROLL
FOR DETAILED EXPLANATION OF ALL HEADINGS AND

* DEL CAMPO, MARTHA H
3011 GENEVIEVE
SAN BERNARDINO, CA 92
ARROWHEAD TR PTN S 1/4
ERSECTION N LI 30TH ST W
GENEVIEVE ST TH N 0 DEG
S W 200.32 FT TH N 89
FT TH S 0 DEG 07 MIN 30
FT TO N LI 30TH ST TH
W 125 FT TO POB EX N 15

WEBB, THOMAS M
WEBB, ANN C
3019 GENEVIEVE ST
SAN BERNARDINO, CA
ARROWHEAD TR PTN S 1/4
ERSECTION N LI 30TH ST
GENEVIEVE ST TH N 0 DEG
S W 50.32 FT FOR POB TH
30 SECONDS W 50 FT TH N
125 FT TH S 0 DEG 07 MIN

Arrowhead

1992

C01

ASSESSMENT YEAR

HOME OWNERS EXEMPTION IS IDENTIFIED BY SYMBOL ** U.S.V.V BY A SYMBOL *

FOR EXPLANATION OF ABBREVIATIONS USED IN THIS ASSESSMENT ROLL SEE TOP OF PAGE A IN THE FRONT OF THIS BOOK

| NAME, POST OFFICE ADDRESS IF KNOWN, AND DESCRIPTION OF PROPERTY | TAX RATE AREA | PARCEL | LAND | IMPROVEMENTS | PERSONAL PROPERTY | EXEMPTIONS HOMEOWNERS | EXEMPTIONS OTHER | TOTAL TAXABLE VALUE | LINE |
|---|---|---|---|---|---|---|---|---|---|
| GOLDSMITH, SUSAN C<br>3071 N ARROWHEAD AVE<br>SAN BERNARDINO, CA 92405<br>TRACT NO 1969 PLAZA RIVIERE LOT 4 | 7001 | 0152 211 21<br>0152 211 21 0 000<br>DR= R RFC= V<br>EXEM= 00 | | | | | | | 6 |
| | | 0152 211 21 BY89 | 26530 | 89672 | | 7000 | | 109202 | |
| WEST, IONE M<br>WEST, FORREST L II<br>3079 ARROWHEAD AVE<br>SAN BERNARDINO, CA 92405<br>TR NO 1969 PLAZA RIVIERA LOT 3 | 7001 | 0152 211 22<br>0152 211 22 0 000<br>DR= R RFC=<br>EXEM= 00 | | | | | | | 12 |
| | | 0152 211 22 BY75 | 7240 | 17187 | | 7000 | | 17427 | 13 |
| NAVARRO, RUBEN<br>NAVARRO, ANNETTE<br>3083 N ARROWHEAD AVE<br>SAN BERNARDINO, CA 92405<br>TR NO 1969 PLAZA RIVIERE LOT 2 | 7001 | 0152 211 23<br>0152 211 23 0 000<br>DR= R RFC= 2<br>EXEM= 00 | | | | | | | 24 |
| | | 0152 211 23 BY92 | 26530 | 107009 | | 7000 | | 126539 | |
| FELIX, MARTIN<br>FELIX, SHERYL A<br>3095 N PERSHING AVE<br>SAN BERNARDINO, CA 92404<br>TR NO 1969 PLAZA RIVIERE LOT 25 AND N 1/2 LOT 24 | 7001 | 0152 212 01<br>0152 212 01 0 000<br>DR= R RFC=<br>EXEM= 00 | | | | | | | 30 |
| | | 0152 212 01 BY91 | 31926 | 95574 | | 7000 | | 120500 | |
| SNOW, SUSEN J<br>SNOW, SUSEN J<br>3096 MOUNTAIN VIEW AVE<br>SAN BERNARDINO, CA 92405<br>TR NO 1969 PLAZA RIVIERE LOT 46 | 7001 | 0152 212 02<br>0152 212 02 0 000<br>DR= R RFC=<br>EXEM= 00 | | | | | | | 36 |
| | | 0152 212 02 BY91 | 25854 | 71721 | | 7000 | | 90575 | |

OF ASSESSMENT ROLL APPROVED BY THE STATE BOARD OF EQUALIZATION
ARY ASSESSMENT ROLL OF PROPERTY IN THE COUNTY OF SAN BERNARDINO, CALIF
ERTY ASSESSED PURSUANT TO CONSTITUTIONAL AND STATUTORY PROVISIONS
SECURED ROLL
FOR DETAILED EXPLANATION OF ALL HEADINGS AND ENTRIES, SEE PAGE A

1992

ASSESSMENT YEAR

NAME, POST OFFICE ADDRESS IF KNOWN, AND DESCRIPTION OF PROPERTY

/CONTINUED/
50 FT TH S 89 DEG 47 MIN

TAYLOR, MARTHA R
3027 GENEVIEVE ST
SAN BERNARDINO,
ARROWHEAD TR PTN S
T ON E LI GENEVIEVE
INTERSECTION N LI 30TH ST
IEVE ST TH N 0 DEG 07 MIN
50 FT TH N 89 DEG 47 MIN
DEG 07 MIN 30 SECONDS E
DEG 47 MIN W 125 FT TO POB

ANTONISSEN, ANDREW E
ANTONISSEN, LINDA M
3035 GENEVIEVE ST
SAN BERNARDINO, CA 924
ARROWHEAD TR PTN S 1/4 LOT
ON E LI GENEVIEVE ST 150.
LI 30TH ST TH N 0 DEG 07 M
W 50 FT TH N 89 DEG 47 MIN
S 0 DEG 07 MIN 30 SECONDS
9 DEG 47 MIN W 125 FT TO P

PRICE, VIOLA K
3043 GENEVIEVE
SAN BERNARDINO, CA 9240
ARROWHEAD TR PTN S 1/4 LOT
M AT SE COR LOT 48 TR NO 30
DEG 7 MIN 30 SECONDS E 50 F
TH S 0 DEG 07 MIN 30 SECON
TH S 89 DEG 47 MIN W 125 FT
VIEVE ST TH N 50 FT TH N 89

Arrowhead 1993 - 1998

Property Address
3047 N ARROWHEAD AVE
SAN BERNARDINO CA 92405

Mailing Address
CLARK, JAMES A
IRWIN-CLARK, ELAINE
3047 N ARROWHEAD AVE
SAN BERNARDINO CA 92405

Address Last Changed 09/27/2011

| Roll Year | 1998 | 1997 | 1996 | 1995 | 1994 | 1993 |
|---|---|---|---|---|---|---|
| Roll Tax Status | SEC-1 | SEC-1 | SEC-1 | SEC-1 | SEC-1 | SEC-1 |
| TRA | 7001 | 7001 | 7001 | 7001 | 7001 | 7001 |
| Land | 137,549 | 134,852 | 132,208 | 130,757 | 129,220 | 126,686 |
| Improvement | 7,500 | 7,353 | 7,209 | 7,129 | 7,045 | 6,907 |
| Total Values | 145,049 | 142,205 | 139,417 | 137,886 | 136,265 | 133,593 |
| Net Value | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 |
| Net Value | 138,049 | 135,205 | 132,417 | 130,886 | 129,265 | 126,593 |

| Last Name | First Name | Middle Name |
|---|---|---|
| CLARK | JAMES | A |
| IRWIN-CLARK | ELAINE | |

**Inquiry Driver at NPDB2P**

Parcel Information  0152-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

Parcel  0152-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
Land Type Size Use  01  SFR
District  01
District  SAN BERNARDINO
ID

**Property Address**
3047 N ARROWHEAD AVE
SAN BERNARDINO CA 92405

**Mailing Address**
CLARK, JAMES A
IRWIN-CLARK, ELAINE
3047 N ARROWHEAD AVE
SAN BERNARDINO CA 92405

Address Last Changed  09/27/2011

**Components**
- Output Doc List
- Ownership - Current
- Ownership - History
- Parcel Data
- Parcel Info
- Problem Deed
- Reviews
- Roll Val - Extracted
- Roll Val - Pending

Assignment
Aux Values
Characteristics

Parcel  0152 211 18 0 000

Il Values - Extracted  0152-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

| Year | 2011 | 2010 | 2009 | 2008 | 2007 | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | 2000 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Tax Status | SEC-1 | SEC-1 | SEC-1 | SEC-1 | SEC-1 | SEC-1 | SEC-1 | SEC-1 | SEC-1 | SEC-1 | SEC-1 | SEC-1 |
| Stat | 7001 | 7001 | 7001 | 7001 | 7001 | 7001 | 7001 | 7001 | 7001 | 7001 | 7001 | 7001 |
| Stat | A | A | | | | | | | | | | |
| Deed Date | | | 06/09/2009 | 114D | | 04/16/2006 510D | | 04/06/2006 510D | 04/06/2006 510D | 04/06/2006 510D | | |
| Owner | CLARK, JAMES | CLARK, JAMES | CLARK, JAMES | CLARK, JAMES | CLARK, JAMES | CLARK, JAMES | CLARK, JAMES | CLARK, JAMES | CLARK, JAMES | CLARK, JAMES | CLARK, JAMES | CLARK, JAMES |
| | ARCINIEGA, LI | ARCINIEGA, LI | ARCINIEGA, LI | ARCINIEGA, LI | ARCINIEGA, LI | ARCINIEGA, LI | ARCINIEGA, LI | ARCINIEGA, LI | ARCINIEGA, LI | ARCINIEGA, LI | ARCINIEGA, LI | ARCIN |
| Land Value | 165,096 | 163,862 | 164,251 | 161,030 | 157,873 | 154,777 | 151,742 | 148,766 | 146,040 | 143,177 | 152,702 | 150,698 |
| | 155,563 | 154,400 | 154,767 | 151,732 | 148,757 | 145,840 | 142,980 | 140,176 | 137,617 | 134,909 | 145,754 | 142,896 |
| | 9,533 | 9,462 | 9,484 | 9,298 | 9,116 | 8,937 | 8,762 | 8,590 | 8,433 | 8,268 | 7,948 | 7,792 |
| Improvement | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Penalties | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Fuel Prop. | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Penalties | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Penalties | 10 | 10 | 10 | TC 25 | Y  O | Y  O | 10 | 10 | 7.000 | 7.000 | 7.000 | 7.000 |
| | | | | TC 50 | Y  B | Y  J | | | | | | |
| | | | | TC 12.5 | Y  O | Y  O | | | | | | |
| Rm Typ1 | 10 | 10 | 10 | SQ 100 | B  03/01/1980 | B  03/01/1980 | 10 | 10 | | | | |
| | | | | SO 100 | B  03/01/1980 | B  03/01/1980 | | | | | | |
| Rm Amt1 | 116,845 | 115,060 | 114,634 | 84,516 | 53,807 | 51,554 | 50,000 | 29,000 | 0 | 0 | 0 | 0 |
| Rm Typ2 | | | | HW 50 | Y  B | Y  B | | | | | | |
| | | | | HW 50 | Y  B | Y  J | | | | | | |
| Rm Amt2 | 0 | 0 | 0 | SAF | SAF | SAF | EAL | SAF | SAF | SAF | TOT-CNV | TOT-CNV |
| Exm Amt2 | 48,251 | 48,802 | 49,617 | 76,514 | 104,066 | 103,223 | 101,742 | 119,766 | 139,040 | 136,177 | 146,702 | 143,698 |
| Value | | | | | | | | | | | | |

**Owner list:**
12  (ERROR) CLARK    JAMES    A
13  (ERROR) CLARK    JAMES    A
14  (ERROR) CLARK    JAMES    A
15  (DEED ERROR) CLARK   JAMES   A
16  CLARK    JAMES    A
17  ARCINIEGA    LETICIA    J
18  CLARK    LETICIA    JA

Arrowhead 2000 – 2011

Recycled    Stock # R-EXA-5-B

## Property Details

**Arciniega Leticia J**
890 Verona Ave, San Jacinto, CA 92583

APN: 433-323-028
Riverside County

### Owner Information

Primary Owner: **ARCINIEGA LETICIA J**

Secondary Owner:

Mail Address: **890 VERONA AVE**
**SAN JACINTO CA 92583**

Site Address: **890 VERONA AVE**
**SAN JACINTO CA 92583**

Assessor Parcel Number: **433-323-028**

Census Tract: **0513.00**

Housing Tract Number: **21900-1**

Lot Number: **81**

Legal description: **Lot: 81  Tract No: 21900-1  Abbreviated Description: LOT:81 CITY:SAN JACINTO
TR#:21900-1 LOT 81 MB 187/093 TR 21900-1 City/Muni/Twp: SAN JACINTO**

### Sale Information

Sale Date:

Document #:

Sale Amount: **N/A**

Seller:

Sale Type:

Cost/SF: **N/A**

### Assessment & Tax Information

Assessed Value: **$148,554**

Land Value: **$50,476**

Imp. Value: **$98,078**

Homeowner H
Exemption:

% Improvement: **66.02%**

Tax Amount: **$1,941.52**

Tax Status: **Current**

Tax Year: **2014**

Tax Rate Area: **10-080**

Tax Account ID: **433323028**

### Property Characteristics

Bedrooms: **2**

Year Built: **1989**

Pool:

Bathrooms: **1**

Square Feet: **1,075 SF**

Lot Size: **5,663 SF**

Partial Baths: **1**

Number of Units: **1**

No of Stories: **1**

Total Rooms:

Garage: **Attached  2**

Fire Place: **1**

Property Type: **Single Family Residential Properties**

Building Style:

Use Code: **Single Family Residential**

Zoning:

## Transaction History

Arciniega Leticia J
890 Verona Ave, San Jacinto, CA 92583

APN: 433-323-028
Riverside County

### Mortgage Record

Recording Date: **04/28/2009**
Loan Amount: **$120,000**
TD Due Date: **04/24/2010**
Interest Rate:
Lender Name: **DAVID D CHRISTIAN**
Lender Type: **Private Party**
Borrowers Name: **ARCINIEGA,LETICIA JOY**
Vesting:

Document #: **2009-0207376 BK-PG -**
Loan Type: **Unknown**
Type of Financing:

### Mortgage Record

Recording Date: **03/19/2007**
Loan Amount: **$100,000**
TD Due Date: **03/19/2037**
Interest Rate: **6.16%**
Lender Name: **CITIBANK NA**
Lender Type: **Bank**
Borrowers Name: **ARCINIEGA,LETICIA J**
Vesting:

Document #: **2007-0186739 BK-PG -**
Loan Type: **Credit Line (Revolving)**
Type of Financing: **FIX**

### Mortgage Record

Recording Date: **01/10/2007**
Loan Amount: **$165,750**
TD Due Date:
Interest Rate:
Lender Name: **WELLS FARGO BANK NA**
Lender Type: **Bank**
Borrowers Name: **ARCINIEGA,LETICIA J**
Vesting:

Document #: **2007-0021655 BK-PG -**
Loan Type: **Unknown**
Type of Financing: **VAR**

### Prior Transfer

Recording Date: **08/30/2006**
Price: **N/A**

First TD: **N/A**

Mortgage Doc #:
Lender Name:
Buyer Name: **ARCINIEGA, LETICIA J**
Buyer Vesting: **N/A**

Document #: **2006-0639036 BK-PG -**
Document Type: **Intrafamily Transfer Or Dissolution**
Type of Sale: **Transfer Tax On Doc. Indicated As EXEMPT**
Interest Rate:

Seller Name: CLARK, JA
Legal description: **Lot: 81  Tract No: 21900-1  Map Ref: MB187 PG093**
City/Muni/Twp: **SAN JACINTO**

## Prior Transfer

| | |
|---|---|
| Recording Date: **08/00/2006** | Document #: **2006-0639036 BK-PG -** |
| Price: **N/A** | Document Type: **N/A** |
| First TD: **N/A** | Type of Sale: **Per Assessor Transaction History** |
| Mortgage Doc #: | Interest Rate: |
| Lender Name: **N/A** | |
| Buyer Name: **ARCINIEGA LETICIA J** | |
| Buyer Vesting: **N/A** | |
| Seller Name: **N/A** | |
| Legal description: **Lot: 81  Tract No: 21900-1** | |
| Abbreviated Description: **LOT 81 MB 187/093 TR 21900-1** | |
| City/Muni/Twp: **SAN JACINTO** | |

## Mortgage Record

| | |
|---|---|
| Recording Date: **04/23/2004** | Document #: **2004-0297281 BK-PG -** |
| Loan Amount: **$104,949** | Loan Type: **VA** |
| TD Due Date: **05/01/2019** | Type of Financing: |
| Interest Rate: | |
| Lender Name: **AEGIS WHOLESALE CORP** | |
| Lender Type: **Finance Company** | |
| Borrowers Name: **CLARK,JAMES A; ARCINIEGA,LETICIA J** | |
| Vesting: **Community Property(Marital Community)** | |

## Mortgage Record

| | |
|---|---|
| Recording Date: **11/13/2003** | Document #: **2003-895484 BK-PG -** |
| Loan Amount: **$100,500** | Loan Type: **VA** |
| TD Due Date: **03/01/2028** | Type of Financing: |
| Interest Rate: | |
| Lender Name: **GREATER ATLANTIC MORTGAGE CORP** | |
| Lender Type: ***N** | |
| Borrowers Name: **CLARK,JAMES A; ARCINIEGA,LETICIA J** | |
| Vesting: **Community Property(Marital Community)** | |



# Comparables

**Arciniega Leticia J**
890 Verona Ave, San Jacinto, CA 92583

**APN: 433-323-028**
**Riverside County**

## Quick Comparable Sales Data

| No. | Address | Date | Price | S/SF | Bld/Area | RM/BR/Bth | YB | Lot Area | Pool |
|-----|---------|------|-------|------|----------|-----------|-----|----------|------|
| | **Subject Property** | 08/30/2006 | N/A | N/A | 1,075 | /2/1 | 1989 | 5,663 SF | |
| 1 | 42051 SAN JOSE DR | 02/06/2015 | $280,000 | $138 | 2,020 | /3/2 | 1979 | 22,651 SF | |
| 2 | 929 VERONA AVE | 02/03/2015 | $127,500 | $94 | 1,347 | /2/1 | 1989 | 4,356 SF | |
| 3 | 42120 SAN JOSE DR | 01/30/2015 | $525,000 | $95 | 5,485 | /4/2 | 1997 | 27,007 SF | |
| 4 | 847 BERGAMO AVE | 01/26/2015 | $200,000 | $136 | 1,467 | /3/2 | 2001 | 4,356 SF | |
| 5 | 733 TORINO AVE | 01/05/2015 | $172,500 | $132 | 1,306 | /2/1 | 1989 | 4,792 SF | |
| 6 | 714 VERONA AVE | 12/24/2014 | $152,500 | $146 | 1,039 | /2/1 | 1989 | 3,920 SF | |
| 7 | 802 BERGAMO AVE | 11/03/2014 | $175,000 | $129 | 1,347 | /2/1 | 1993 | 5,227 SF | |
| 8 | 1814 CARRERA DR | 08/04/2014 | $167,500 | $120 | 1,395 | /2/1 | 1989 | 4,356 SF | |
| 9 | 798 VERONA AVE | 07/18/2014 | $170,000 | $130 | 1,306 | /2/1 | 1989 | 3,920 SF | |
| 10 | 1864 CARRERA DR | 04/18/2014 | $175,000 | $129 | 1,347 | /2/1 | 1989 | 4,356 SF | |
| 11 | 1733 MESSINA DR | 02/28/2014 | $182,000 | $113 | 1,610 | /3/2 | 2002 | 4,356 SF | |
| 12 | 789 TORINO AVE | 01/23/2014 | $158,000 | $117 | 1,347 | /2/1 | 1989 | 4,792 SF | |
| 13 | 872 BERGAMO AVE | 12/03/2013 | $173,000 | $107 | 1,610 | /3/2 | 1999 | 4,356 SF | |
| 14 | 997 VERONA AVE | 11/22/2013 | $170,000 | $106 | 1,589 | /3/2 | 2000 | 4,356 SF | |
| 15 | 713 VERONA AVE | 09/06/2013 | $118,000 | $102 | 1,156 | /2/1 | 1989 | 4,356 SF | |
| 16 | 1766 CARRERA DR | 09/05/2013 | $160,000 | $148 | 1,075 | /2/1 | 1989 | 3,920 SF | |

## Area Sales Analysis

Total Area Sales: **16**                         Median # of Bedrooms: **2**

Median Lot Size: **4,356 SF**                    Median # of Baths: **1**

Median Living Area: **1,347 SF**                 Median Year Built: **1989**

Price Range - 2 Yrs: **$118,000 To $525,000**    Age Range: **13 Years To 36 Years**

Median Value: **$171,250**                       Median Age: **26 Years**



## Assessor Map

Click here to get the map in PDF
Click here to get the map in TIF



## Neighbors

Arciniega Leticia J
890 Verona Ave, San Jacinto, CA 92583

APN: 433-323-028
Riverside County

---

**ARCINIEGA LETICIA J**
**890 VERONA AVE**
**SAN JACINTO CA 92583**
APN: 433-323-028

| | |
|---|---|
| Bedrooms: 2 | Bathrooms: 1 |
| Square Feet: 1,075 SF | Lot Size: 5,663 SF |
| Year Built: 1989 | Garage: A |

**KRUSE SHERRY J**
**900 VERONA AVE**
**SAN JACINTO CA 92583**
APN: 433-323-029

| | |
|---|---|
| Bedrooms: 2 | Bathrooms: 1 |
| Square Feet: 1,347 SF | Lot Size: 3,920 SF |
| Year Built: 1989 | Garage: A |

**CARRILLO ROBERT E; CARRILLO PHYLLIS L**
**908 VERONA AVE**
**SAN JACINTO CA 92583**
APN: 433-323-030

| | |
|---|---|
| Bedrooms: 2 | Bathrooms: 1 |
| Square Feet: 1,347 SF | Lot Size: 3,049 SF |
| Year Built: 1989 | Garage: A |

**THE SHIMIZU FAMILY TRUST, ; SHIMIZU, TAMOTSU**
**916 VERONA AVE**
**SAN JACINTO CA 92583**
APN: 433-323-031

| | |
|---|---|
| Bedrooms: 2 | Bathrooms: 1 |
| Square Feet: 1,347 SF | Lot Size: 3,920 SF |
| Year Built: 1989 | Garage: A |

**HOOVER R DUDLEY; HOOVER SUSAN A**
**875 VERONA AVE**
**SAN JACINTO CA 92583**
APN: 433-322-001

| | |
|---|---|
| Bedrooms: 2 | Bathrooms: 1 |
| Square Feet: 1,306 SF | Lot Size: 5,227 SF |
| Year Built: 1993 | Garage: A |

**MANION MARLENE S**
**905 VERONA AVE**
**SAN JACINTO CA 92583**
APN: 433-321-013

| | |
|---|---|
| Bedrooms: 3 | Bathrooms: 2 |

**PROTZO JOSEPH; PROTZO JULIA STELLA**
**878 VERONA AVE**
**SAN JACINTO CA 92583**
APN: 433-323-027

| | |
|---|---|
| Bedrooms: 2 | Bathrooms: 1 |
| Square Feet: 1,347 SF | Lot Size: 3,920 SF |
| Year Built: 1989 | Garage: A |

**RODRIGUEZ ARCINIEGA, M DOLORES; THE M DOLORES RODRIGUEZ ARCINIEGA TRUST,**
**870 VERONA AVE**
**SAN JACINTO CA 92583**
APN: 433-323-026

| | |
|---|---|
| Bedrooms: 2 | Bathrooms: 1 |
| Square Feet: 1,156 SF | Lot Size: 4,356 SF |
| Year Built: 1989 | Garage: A |

**EDGAR JAMES; EDGAR KATHERYN**
**862 VERONA AVE**
**SAN JACINTO CA 92583**
APN: 433-323-025

| | |
|---|---|
| Bedrooms: 2 | Bathrooms: 1 |
| Square Feet: 1,347 SF | Lot Size: 3,920 SF |
| Year Built: 1989 | Garage: A |

**OMALLEY TARA M**
**854 VERONA AVE**
**SAN JACINTO CA 92583**
APN: 433-323-024

| | |
|---|---|
| Bedrooms: 2 | Bathrooms: 1 |
| Square Feet: 1,347 SF | Lot Size: 3,920 SF |
| Year Built: 1989 | Garage: A |

**LAPPINGA JAMES L; LAPPINGA MARY J**
**924 VERONA AVE**
**SAN JACINTO CA 92583**
APN: 433-323-032

| | |
|---|---|
| Bedrooms: 2 | Bathrooms: 1 |
| Square Feet: 1,347 SF | Lot Size: 3,920 SF |
| Year Built: 1989 | Garage: A |

**NUGENT ANN E**
**867 VERONA AVE**
**SAN JACINTO CA 92583**
APN: 433-322-002

| | |
|---|---|
| Bedrooms: 2 | Bathrooms: 1 |

| Square Feet: 1,417 SF | Lot Size: ? SF | Square Feet: 1,347 SF | Lot Size: ?92 SF |
| Year Built: 2004 | Garage: A | Year Built: 1989 | Garage: A |

WIGLE JOSEPH M; WIGLE JACQUELYN D
**836 VERONA AVE**
**SAN JACINTO CA 92583**
APN: 433-323-023

| Bedrooms: 2 | Bathrooms: 1 |
| Square Feet: 1,306 SF | Lot Size: 3,920 SF |
| Year Built: 1989 | Garage: A |

ESCORPISO ABELARDO P; ESCORPISO
BARBIE ATWOOD
**859 VERONA AVE**
**SAN JACINTO CA 92583**
APN: 433-322-003

| Bedrooms: 2 | Bathrooms: 1 |
| Square Feet: 1,306 SF | Lot Size: 4,792 SF |
| Year Built: 1989 | Garage: A |

DOWNES, MYRNA V; MYRNA V DOWNES
REVOCABLE TRUST,
**913 VERONA AVE**
**SAN JACINTO CA 92583**
APN: 433-321-012

| Bedrooms: 2 | Bathrooms: 1 |
| Square Feet: 1,347 SF | Lot Size: 4,356 SF |
| Year Built: 1989 | Garage: A |

## AGREEMENT OF COMPROMISE, SETTLEMENT, AND
## MUTUAL AND GENERAL RELEASE

This Agreement of Compromise, Settlement, and Mutual and General Release ("Agreement") is made by and among Plaintiff, JAMES CLARK, (hereinafter referred to as "Plaintiff") and Defendant, Leticia Arciniega (hereinafter referred to as "Settling Defendant.")

### I.    RECITALS

This Agreement is entered into with reference to the following facts:

A.    The undersigned understand, acknowledge, and agree that the execution of this Agreement constitutes the compromise of disputed and contested claims and is not to be construed as an admission of liability on the part of any of the parties hereto. It is the parties' desire and intention to effect a final settlement and resolution of any and all claims by and between the parties hereto, including claims that may or may not have accrued as of the date of this Agreement.

B.    On March 2, 2007, Plaintiff filed a complaint against Settling Defendant bearing case number SCVSS147607 in the Superior Court of the State of California, County of San Bernardino. On or about May 30, 2008, Plaintiff filed a first amended complaint for breach of contract, specific performance, resulting trust, declaratory relief, and partition of the real property located at 3047 North Arrowhead Avenue, San Bernardino, California 92405 ("Subject Property.") Settling Defendant answered both complaints and asserted defenses, claims, etc. The complaint, the amendment to the complaint, the answer to both and all allegations, causes of action and claims are hereinafter referred to as the "Pending Litigation."

C.    Each of the parties hereto considers it to be in his or her interest, and to his or her advantage, forever to dismiss, settle, adjust, and compromise all claims and defenses which have been, or could have been asserted in the settled matters, and all other claims and defenses which have been asserted, or could have been asserted, by any party hereto against any other party hereto.

D.    Each of the parties hereto recognizes that to litigate claims and defenses would involve extensive time delays and substantial expenditures of resources.

### II.    AGREEMENT

NOW, THEREFORE, for good and valuable consideration including, but not necessarily limited to, the covenants, conditions and promises contained herein, the receipt, sufficiency and adequacy of which consideration is conclusively acknowledged by the parties, the parties hereto covenant and agree as follows:

A. Plaintiff will pay Settling Defendant the principal sum of Fifty Thousand Dollars ($50,000). The settlement draft will be made payable to defendant and her counsel of record. This payment is due on Wednesday May 13, 2009, so long as all parties have executed the settlement agreement and defendant has provided plaintiff with a properly signed and notarized quitclaim deed granting her entire interest in the

JC000077

Subject Property to plaintiff.  Plaintiff is required to pay defendant $1,000 for each day that he is late in delivering the settlement funds to defendant, so long as all the conditions set forth above are met.

B.  No later than May 13, 2010, defendant will take all necessary measures to pay off the existing VA loan and removing plaintiff's name from the loan on her property located at 890 Verona Avenue, Hemet, California.  Defendant will not attempt to assume the VA loan.  Defendant agrees to pay plaintiff liquidated damages at the rate of $1000 per day for everyday that she is late complying with this provision.  Plaintiff will execute all necessary documents so as to enable defendant effectuate the removal of plaintiff's name from the loan on her property on 890 Verona, Hemet, CA.

C.  Subject to defendant fulfilling the obligations set forth above in Paragraph IIB, plaintiff hereby waives any and all interests he may have in the property located at 890 Verona Avenue, Hemet, California.

### 1.     Attorney's Fees and Costs

Each party shall bear his or her own attorney's fees and costs in connection with the Pending Litigation.  In the event of future actions including, but not limited to filing a motion to enforce settlement, litigation or arbitration relating to the enforcement of this Agreement, the prevailing party shall be entitled to his or her reasonable attorney's fees, expenses and costs incurred therein pursuant to California *Civil Code* section 1717.

### 2.     Request for Dismissal

Upon exchange of the signed settlement documents, quitclaim deed and settlement draft, Plaintiff will file a Request for Dismissal of his Complaint with the Court.  Plaintiff will forward a conformed copy of the Request for Dismissal to Settling Defendant.

### 3.     Mutual Releases

In consideration of the terms and provisions of this Agreement, and with the exception of the obligations set forth herein, all parties to this Agreement shall and do hereby relieve, and release, and discharge all parties to this Agreement, their successors and assigns, and all of their present and former attorneys, and agents, representatives, insurance carriers, and each of them and their successors, assigns, and heirs from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs, expenses (including but not limited to attorney fees), damages, actions and causes of actions, of whatever kind or nature, whether now known or unknown, suspected or unsuspected, based on, arising out of, or in connection with anything whatsoever done, omitted, or suffered to be done at any time prior to the date of execution of this Agreement, in connection with the matters or facts alleged or set forth in, or related to, the Pending Litigation, all claims which were raised or could have been raised in the Pending Litigation, as well as all claims that relate to or arise out of any of the allegations in the Pending Litigation and any and all other causes of action, suits, debts, controversies, claims and demands whatsoever, whether known or unknown, suspected, claimed, which either party ever had, now have, or may have by reason of any matter, event or thing whatsoever from the beginning of time to the date on which this Agreement becomes effective.

JC000078

4.    **Court to Retain Jurisdiction Pursuant to C.C.P. § 664.6**

The parties agree and stipulate that the court shall retain jurisdiction over the parties to enforce this Agreement until full performance thereof and this settlement Agreement shall be enforceable to the fullest extent provided by *Code of Civil Procedure* section 664.6. If any of the parties to this agreement are forced to take any action to enforce the terms of the settlement, including but not limited to, filing a motion to enforce, arbitration or a new action, the prevailing party will be entitled to recover their attorney's fees and costs.

5.    **Incorporation of Recitals**

By their signatures hereon, the parties hereby restate, confirm, acknowledge and warrant the facts, purposes and recitations contained in the recitals hereof as though same were terms of this Agreement.

6.    **No Admission of Liability**

This settlement is a compromise of a dispute and represents the compromise of a disputed claim. The parties have entered into this Agreement for the purpose of terminating and resolving their various disputes and differences and for the purpose of avoiding the cost, expense, uncertainty and inconvenience of litigation. Accordingly, neither this Agreement, nor any action taken pursuant hereto, constitutes now, nor shall be construed to constitute, any admission of liability or of any of the claims made against any party, all of which liability or fault is expressly denied. No rights shall inure to any party hereto, or any third party, from the obligations, representations and agreements of the parties made herein, as this Agreement is made solely for the purpose of terminating the disputes between the parties.

7.    **Acknowledgement of Civil Code Section 1542**

In making this mutual release, and with the exception of the obligations set forth herein, the parties intend to release each other from any and all liability of any nature whatsoever, from any claim of damages or injury, or for equitable or declaratory relief of any kind, whether the basis thereof is suspected, unsuspected, known or unknown. Thus, except as otherwise provided herein, the parties expressly waive the protections afforded by California *Civil Code* section 1542, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his settlement with the debtor.

8.    **Declaration re: Reliance**

No party, nor any agents or related entities of a party, has made any statement or representation to any other party regarding any fact relied upon in entering into this Agreement, and each party expressly states that, except as otherwise provided in this section, he or she does not rely upon any statement, representation or promise of any other party or any party's agents or related entities in executing this Agreement, or in making the settlement provided for herein, except as is expressly stated in this Agreement. Each party to this Agreement has had full opportunity to consult with counsel as to the interpretation and intent of this Agreement, and has

JC000079

made such investigation of the facts pertaining to this settlement, and this Agreement, and of all other matters pertaining thereto, as he or she deems necessary and appropriate.

**9.    Entire Agreement**

This Agreement contains the entire understanding and agreement of the parties with respect to the subject matter hereof, and supersedes any prior or contemporaneous written or oral agreements between them concerning same.  This Agreement may be waived, modified or amended only by a subsequent writing signed by all of the parties, specifically referring to this document.

**10.   No Waiver**

The delay in enforcement, or waiver, by any party of the timely or other performance of any covenant, condition or promise contained herein shall neither invalidate this Agreement nor be construed as a waiver by that party of their right to subsequently demand timely, or other, performance of that, or any other, covenant, condition or promise contained herein.

**11.   Headings**

The headings and subheadings of the different paragraphs of this Agreement are inserted for convenience and reference only, and are not to be considered part of this Agreement or relevant to the interpretation of the meaning, construction or effect of the relating body.

**12.   Partial Invalidity**

In the event any term, condition or provision of this Agreement is held to be invalid, void or unenforceable by a court of competent jurisdiction, then the remaining provisions hereof shall remain in full force and effect, and shall in no way be effected, impaired or invalidated by such holding.  To the extent necessary, any such remaining provisions shall be interpreted in accordance with the intent of the parties as evidenced by all other provisions, including the offending provisions hereof.

**13.   Governing Law and Venue**

This Agreement has been drafted with reference to California law.  Accordingly, this Agreement shall be interpreted and enforced in accordance with the laws of the State of California.

**14.   Binding Effect**

This Agreement shall inure to the benefit of, and shall be binding upon, the respective assigns, successors in interest, personal representatives, executors, estate heirs, legatees, agents and related entities of each of the parties hereto.

**15.   Execution of Documents and Necessary Acts**

The parties agree to promptly, and without charge, perform such further acts, and to execute, acknowledge and deliver such additional documents, as may be reasonably requested, necessary or appropriate to carry out the provisions of this Agreement.

JC000080

**16.    Authority to Execute Agreement**

The signatories to this Agreement represent and warrant, each to the other, that they have full power and authority to execute this Agreement on behalf of the entity for which it is executed, and to do any and all of the things reasonably required hereunder.

**17.    Construction and Interpretation**

The parties acknowledge that this Agreement represents the joint product of negotiation between the parties and should, therefore, be interpreted fairly and simply, in accordance with ordinary meaning, and not for or against either party as the drafter thereof.

**18.    Warranty of No Transfer**

Each of the parties hereto represents and warrants to the other that each such party has not heretofore assigned, transferred or hypothecated, or purported to assign, transfer or hypothecate to any person or other entity any debt, judgment, claim, liability, demand, action, cause of action, or any interest therein, based upon, arising out of, pertaining to, concerning, or connected with any matters, facts, events, circumstances or things released hereby, and further agrees to indemnify and hold each other harmless of any claim, demand or cause of action if subsequently brought based upon any such assignment, transfer or hypothecation. The parties, and each of them, further warrant that they are, at the date hereof, the holders of any and all claims released hereby.

**19.    Execution, Effective Date, and Counterparts**

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The effective date hereof shall be the date last executed by a party hereto. Any party may execute this Agreement by way of a facsimile signature, a copy of which will operate as an original. The party executing the facsimile copy shall promptly transmit a copy thereof to all other parties.

IN WITNESS WHEREOF, the parties have executed this Agreement effective as indicated at paragraph 19 above.

DATED: May  4  , 2009

_____
JAMES CLARK

DATED: May  11  , 2009

_____
LETICIA ARCINIEGA

///

///

Page 5 of 6

JC000081

APPROVED AS TO FORM:

DATED: May _11_, 2009   FARZAD & MAZAREI, ALC

        By: _____
          Tawny Mazarei
          Attorneys for Plaintiff, JAMES CLARK

DATED: May _11th_, 2009   MILTON & DeKRUIF

        By: _____
          Michael K. DeKruif
          Attorneys for Defendant, LETICIA ARCINIEGA

JC000082



62-20/311    **2353807586**



WASHINGTON **50000** 00
MUTUAL    FIVE ZERO ZERO ZERO ZERO CTSCTS
*************Apr 30, 2009 50 THOUSAND  DOLLARS AND 00 CENTS ***********

Pay to
the         Milton and DeKruif and Leticia Arciniega
order       TAX ID 20-0293743
of:

Washington Mutual, a division of JPMorgan Chase Bank, N.A.

**DRAWER / PURCHASER COPY**
**NON-NEGOTIABLE**

Remitter
JAMES A CLARK                                          1294 113
SETTLEMENT

Citibank, N.A. - One Penn's Way - New Castle DE 19720

303111401 REV1 02/09 8810013776

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK   **OFFICIAL CHECK**   HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

WaMu®                                        62-20/311    **2353807586**

MATCH THE AMOUNT IN WORDS WITH THE AMOUNT IN NUMBERS

WASHINGTON **50000** 00
MUTUAL    FIVE ZERO ZERO ZERO ZERO CTSCTS
*************Apr 30, 2009 50 THOUSAND  DOLLARS AND 00 CENTS ***********

Pay to
the         Milton and DeKruif and Leticia Arciniega
order       TAX ID 20-0293743
of:

Drawer:Washington Mutual, a division of JPMorgan Chase Bank, N.A.

AUTHORIZED SIGNATURE

REMITTER
JAMES A CLARK                                          1294 113
SETTLEMENT

Citibank, N.A. - One Penn's Way - New Castle DE 19720

⑈2353807586⑈ ⑆031100209⑆    38769931⑈

JC000083